JOHN BROWN, Respondent, *v.* BLANCHE REALTY COMPANY, Appellant.

First Department, July 11, 1918.

**Master and servant — negligence — injury to janitor in apartment house while attempting to operate dumb-waiter — evidence.**

In an action by the plaintiff for personal injuries sustained while attempting to operate a dumb-waiter in an apartment house in which he was the janitor for the defendant a recovery was sought to be sustained on the theory that the rope, which was worn and defective, broke. Evidence

examined, and *held*, insufficient to show that the accident was due to any negligence on the part of the defendant, and that, therefore, a judgment in favor of the plaintiff should be reversed and a new trial granted.

APPEAL by the defendant, Blanche Realty Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th day of March, 1918, upon the verdict of a jury for $1,500, and also from an order entered in said clerk's office on the 26th day of March, 1918, denying defendant's motion for a new trial made upon the minutes.

*Barent L. Visscher* of counsel [*Frank J. O'Neill*, attorney], for the appellant.

*Elmer C. Miller*, for the respondent.

LAUGHLIN, J.:

The recovery was for personal injuries sustained by plaintiff while attempting to operate a dumb-waiter in a six-story apartment house at No. 17 West One Hundred and Thirty-sixth street, borough of Manhattan, New York city, of which he was the janitor for defendant. The defendant owned the apartment house and three others adjacent thereto and plaintiff had been employed as superintendent or janitor thereof for about three years prior to the accident. He testified that it was his duty to use the dumb-waiter to remove garbage at about six-thirty P. M. daily. He alleged that the dumb-waiter was in an insecure, dangerous and unsafe condition which was known to defendant or could have been known to it had it exercised proper care, and that while he was operating it in the course of his duties it fell owing to said insecure, dangerous and unsafe condition.

The only testimony with respect to the accident was that of the plaintiff. He testified that on the 5th of August, 1914, at about six-thirty P. M. he went to the foot of the dumb-waiter shaft in the basement; that the dumb-waiter was then between the second and third floors and that he pulled the rope with a view to bringing it down, and found that it was stuck and then endeavored to loosen it by pulling down on one rope with one hand and up on the other rope with his other hand, " about a stroke on each side " or " about a yard or more," and not being able to bring it down he went

to the second floor but could not " locate what was the matter," and then returned to the basement and " started to pull on it a little again and the next thing I hear for myself, I had a lick on the nose;" that the door to the dumb-waiter shaft in the basement had been removed and he was standing in the opening " right underneath the shaft " facing the dumb-waiter door; that his head was neither inside nor outside the shaft and that his face " was turned right in the shaft;" that the outer edge of the bottom of the dumb-waiter hit his nose and after the accident the dumb-waiter " was hanging about halfway out the shaft;" that he did not know " what was wrong" with the dumb-waiter, but that the "box * * * was off the track" in which it was designed to move. One Thompson, who was employed by plaintiff to assist him and had charge for him of two of the apartment houses, testified that he came to the scene shortly after the accident and observed that the bottom part of the dumb-waiter was " halfway out of the dumb-waiter shaft;" that he examined the rope and saw that the loop coming through the eye of the weight was " all rusty, dark, frazzled and had a couple of new strings in it," and that he removed the dumb-waiter to the corner of the basement where it remained three or four weeks and until plaintiff returned after the accident. The plaintiff further testified that when he resumed his duties about three weeks after the accident he saw the dumb-waiter and rope which was still attached to it in the corner of the room and that in the eye " that goes through the weight of the dumb-waiter it was frazzled, more than half of the eye was rotten and just had a very few new strands in the eye." On cross-examination he was asked where the weight to the eye of which the rope is attached by a loop is with reference to the dumb-waiter and he answered by asking, in effect, if counsel wished to know " where was the weight? " to which counsel replied in the affirmative and the plaintiff answered: " Why, the weight was in the bottom of the dumb-waiter shaft." On being recalled a second time plaintiff testified that about three or four weeks before the accident he informed defendant's collector, who called to receive the rent collected by the janitor and collected the other rent, that the dumb-waiter " was off the track." He also testified in effect that it was

not repaired. Defendant's renting agent and his assistant testified that they inspected the premises weekly and discovered nothing connected with the dumb-waiter out of order or repair and that no complaint was made to them by the janitor. No one testified that the rope broke or that anything gave way and there was no evidence with respect to whether or not the dumb-waiter was loaded at the time.

The recovery is sought to be sustained on the theory that the rope which was worn and defective broke. If it broke that should have been shown. The evidence is quite as consistent with the view that the rope did not break but that the dumb-waiter became loosened by the pressure exerted by plaintiff and came down rapidly owing thereto as with the view that it broke. The plaintiff's testimony that the weight was in the bottom of the shaft does not identify the time with respect to which he was speaking. He may have meant that it was there when he returned three weeks after the accident. This material fact as to whether the rope parted and when, could and should have been shown. The evidence was insufficient to take the case to the jury on the theory that the dumb-waiter was off its track or out of the groove or grooves in which it was designed to move. That too was capable of proof by measurements by which it could have been shown whether or not the dumb-waiter could, without accident or pressure such as plaintiff exerted, have left its regular path. That it was stuck was sufficiently shown but not the cause thereof. It is manifest that it might have become stuck without any negligence on the part of the defendant. The plaintiff having failed to show that the accident was due to any negligence on the part of the defendant, we do not deem it necessary to consider whether the plaintiff sufficiently showed freedom from contributory negligence to sustain the verdict on that issue.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

DOWLING, SMITH, PAGE and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.